<u>John Calvin Dove, Jr. v. Gary Simmons, et al.</u>, No. 63, September Term, 2025

**ELECTION LAW – CERTIFICATE OF CANDIDACY – RESIDENCY – DOMICILE – FALSE STATEMENT – CONTINUANCE WHERE MEMBER OF GENERAL ASSEMBLY IS ATTORNEY OF RECORD –** Supreme Court of Maryland held that under Md. Code Ann., Cts. & Jud. Proc. (1974, 2020 Repl. Vol.) ("CJ") § 6-402(b), court is required to grant motion for continuance of proceeding only when member of General Assembly, who is attorney of record in proceeding, files motion requesting continuance of proceeding before legislative session begins. Supreme Court concluded that attorney who enters appearance in proceeding after legislative session begins waives benefit of CJ § 6-402(b), by virtue of having entered appearance in proceeding after time in which attorney could have requested relief under section (b). In this case, separate from CJ § 6-402(b), upon consideration of cause or necessity of postponement and potential prejudice to parties, Supreme Court denied request.

Supreme Court held that where candidate makes material misrepresentation on certificate of candidacy, such as misrepresentation about candidate's residential address, refusal of acceptance of certificate is warranted and candidate's certificate of candidacy is not valid. Supreme Court concluded that Md. Code Ann., Elec. Law (2003, 2022 Repl. Vol., 2025 Supp.) ("EL") § 5-304(c)(4), by its plain language, requires that on certificate of candidacy, candidate must provide either individual's voter registration address, if address is individual's current address, or if not, candidate must provide current address. Supreme Court concluded that circuit court correctly determined that Appellant did not reside or live at address provided on certificate of candidacy and misrepresented his residential address, *i.e.*, made materially false statement, on his certificate of candidacy. Supreme Court concluded Appellant misrepresenting his residential address on his certificate of candidacy invalidated certificate.

IN THE SUPREME COURT

OF MARYLAND

No. 63

September Term, 2025

_____

JOHN CALVIN DOVE, JR.

v.

GARY SIMMONS, ET AL.

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Watts, J.
Killough, J., concurs.

_____

Filed:  July 13, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case arises out of a challenge to a certificate of candidacy filed by John Calvin Dove, Jr., Appellant, who sought the nomination of the Democratic Party for the Maryland House of Delegates, Legislative District 12B, for the 2026 Gubernatorial Primary Election. Gary Simmons, Appellee, a resident and registered Democratic voter of Legislative District 12B, and the incumbent Delegate for Legislative District 12B, filed a petition to challenge Mr. Dove's candidacy, naming Mr. Dove, the Anne Arundel County Board of Elections ("the County Board"), Appellee, and the Maryland State Board of Elections ("the State Board"), Appellee, as defendants.

In the petition, Mr. Simmons requested that the Circuit Court for Anne Arundel County disqualify Mr. Dove from appearing on the Democratic primary ballot for Legislative District 12B on two grounds: (1) because Mr. Dove was not a resident of Legislative District 12B at the time he filed his certificate of candidacy, he was ineligible to serve as a candidate for the House of Delegates from that district; and (2) Mr. Dove made false and misleading statements in both his voter registration application and certificate of candidacy that he lived in Legislative District 12B at times that he did not.

Mr. Dove filed a motion to dismiss the petition as premature, arguing that Article III, § 9 of the Constitution of Maryland requires a candidate for the office of delegate to reside in and have a place of abode in the district for only six months before the general election and that the deadline would not arrive until May 3, 2026. After a hearing, the circuit court granted the motion to dismiss. Pursuant to Md. Code Ann., Elec. Law (2003, 2022 Repl. Vol., 2025 Supp.) ("EL") § 12-203 and Maryland Rule 8-306, Mr. Simmons noted a direct appeal to this Court. We issued an expedited briefing schedule and heard

argument. After oral argument, we issued a *per curiam* opinion holding that the circuit court erred in concluding that Mr. Simmons's petition was premature. See Simmons v. Dove, 493 Md. 576, 579, 353 A.3d 1228, 1230 (2026). We reversed the judgment of the circuit court and remanded the case for a decision on the merits of Mr. Simmons's challenge. See id. at 579-80, 353 A.3d at 1230-31.

On remand, the circuit court held a hearing and granted the petition, disqualifying Mr. Dove from the ballot as a candidate for State Delegate from Legislative District 12B. The circuit court found that Mr. Dove did not reside in Legislative District 12B on the date of filing his certificate of candidacy and thus had misrepresented his address on the certificate. Mr. Dove noted a direct appeal to this Court. Pursuant to EL § 12-203 and Maryland Rule 8-306, we again issued an expedited briefing schedule, and heard oral argument on April 13, 2026. After oral argument, we issued a *per curiam* order affirming the circuit court's judgment and ordering that costs were to be paid by Mr. Dove, with the mandate to issue forthwith. See Dove v. Simmons, 493 Md. 583, 583-84, 355 A.3d 227, 227 (2026). We now explain the basis for our order.

## BACKGROUND

On February 13, 2026, 11 days before filing a certificate of candidacy to run as a candidate for delegate in Legislative District 12B in the Democratic Party primary election, Mr. Dove completed an "Electronic Voter Registration Application," changing his voter registration to a residential address of 284 Caldwell Road, Pasadena, Maryland in Anne Arundel County ("284 Caldwell Road"), and a mailing address of a P.O. Box in Gambrills,

Maryland.[1]  Mr. Dove's previous voter registration information indicated his residential address was 1302 Bluegrass Way, Gambrills, Maryland ("1302 Bluegrass Way").

On February 24, 2026, Mr. Dove filed a certificate of candidacy for the 2026 Gubernatorial Primary Election, seeking the Democratic Party nomination for the House of Delegates in District 12B.  On the certificate, Mr. Dove identified his residential address as 284 Caldwell Road and his mailing address as the P.O. Box in Gambrills, Maryland. Mr. Dove signed and dated the certificate, certifying under the penalty of perjury that, among other things, the following was true: "I am a registered voter and a citizen of Maryland and meet all the requirements for the above listed office."  On a "Candidate Information Sheet," a worksheet accompanying the certificate of candidacy, Mr. Dove identified his residential address as 284 Caldwell Road and his public mailing address as the P.O. Box in Gambrills.

In an affidavit submitted by the State Board in the circuit court, Devki Dave, an IT Functional Analyst for the State Board, who assisted Mr. Dove with his candidacy filing, stated that she verified information she received from Mr. Dove in the candidate information sheet against Mr. Dove's information in MDVOTERS, the statewide voter registration and electoral administration database, to make sure the information matched. Ms. Dave averred that after she entered the information from Mr. Dove's information sheet into the database, she printed a hard copy of Mr. Dove's Certificate of Candidacy, asked Mr. Dove to read the certificate to make sure that all of the information on it was correct,

---

[1]According to a Voter Profile Report, Mr. Dove's residential address was changed for purposes of his voter registration on February 17, 2026.

- 3 -

and Mr. Dove read the certificate and signed it.

On March 11, 2026, Mr. Simmons timely filed in the circuit court a "Petition to Challenge Certificate of Candidacy, Residency & Qualifications of John Calvin Dove, Jr., Candidate for the Nomination of the Democratic Party for State Delegate from Legislative District 12B for the 2026 Gubernatorial Election." (Some capitalization omitted). In the petition, Mr. Simmons alleged that "Mr. Dove resides in, is domiciled in, and maintains a primary place of abode in the 31st Legislative District[,]" but that he filed a certificate of candidacy in which he "represented that he was a resident of Legislative District 12B."

Mr. Simmons requested that the circuit court disqualify Mr. Dove from appearing on the Democratic primary ballot in Legislative District 12B on two distinct grounds. First, Mr. Simmons alleged that, because Mr. Dove was not a resident of Legislative District 12B at the time he filed his certificate of candidacy, Mr. Dove was not eligible to serve as a candidate for the House of Delegates from that district. According to Mr. Simmons, Mr. Dove was ineligible because: (a) under EL § 5-202, a candidate for the House of Delegates must be legally registered to vote in the district the candidate seeks to represent, and Mr. Dove could not have been legally registered to vote in District 12B because he did not reside in that district and rather resided in District 31; and (b) under the Election Law Article, a candidate for office must meet all requirements for eligibility for office by the time of filing a certificate of candidacy, which Mr. Dove did not because he did not reside in Legislative District 12B at the time of filing his certificate of candidacy.

Second, Mr. Simmons alleged that Mr. Dove made false and misleading statements in his voter registration application and certificate of candidacy by stating that he resided

- 4 -

in Legislative District 12B when he did not and by failing to disclose his actual place of residence in Legislative District 31. According to Mr. Simmons, based on the allegedly false statements, Mr. Dove's certificate of candidacy was invalid, and Mr. Dove should be excluded from the Democratic Party primary ballot for the 2026 Gubernatorial election.

The circuit court scheduled a hearing on the petition for March 16, 2026. The night before the hearing, Mr. Dove filed "Respondent's Motion to Dismiss Petition and Request for Sanc[]tions," moving to dismiss on the ground that the petition was premature. Mr. Dove argued that Article III, § 9 of the Constitution of Maryland "measures legislative residency at the time of election not at the time of filing for nomination[,]" and requires that a candidate for the office of Delegate reside in and be domiciled in the district for only six months preceding the general election. Mr. Dove asserted that the six-month deadline would not arrive until May 3, 2026, six months before the general election of November 3, 2026, and that he "could fully satisfy the Constitutional residency requirement between [the filing of the motion] and May 3, 2026[.]" Mr. Dove contended that "the alleged defect may never occur." As such, Mr. Dove argued that the petition, which according to him, sought "to remove a candidate months before the constitutional residency period begins[,]" was premature.

On March 16, 2026, the circuit court held the scheduled hearing and granted Mr. Dove's motion to dismiss, ruling that the motion was premature. On the same day, the circuit court issued an opinion, in which it determined that the constitutional residency deadline was in the future, *i.e.*, the case was "outside the six-month period preceding the election," and it could not "make a finding on whether [Mr. Dove] will in the future meet

the constitutional requirements for candidacy as a delegate."

On March 17, 2026, Mr. Simmons noted a direct appeal to this Court.

On March 18, 2026, the State Board filed a line in this Court advising that, for the June 23, 2026 primary election, the certification and publication deadline for ballots was April 20, 2026. The State Board requested that litigation in the case be resolved by March 31, 2026, so that it could fulfill its responsibility to prepare ballots for certification and coordinate with local boards of election.

After an expedited briefing schedule, on March 30, 2026, we heard oral argument. After oral argument, on the same day, we issued a *per curiam* opinion holding that the circuit court erred in concluding that Mr. Simmons's petition was premature. See Simmons, 493 Md. at 579, 353 A.3d at 1230. We reversed the judgment of the circuit court and remanded for a decision on the merits of Mr. Simmons's challenge under EL §§ 5-305 and 12-202, stating:

> A majority of the Court concludes that Mr. Simmons's challenge is ripe with respect to his claim that Mr. Dove failed to satisfy requirements in the Election Law Article to be lawfully registered to vote in, and to reside or have a place of abode in, Legislative District 12B at the time he filed his certificate of candidacy. A minority of the Court concludes that Mr. Simmons's challenge is ripe with respect to his claim that Mr. Dove's certificate of candidacy is invalid because he misrepresented his residential address on the certificate. On remand, the court should address the merits of both claims.

Id. at 579-80, 353 A.3d at 1230-31. To allow time for any further appeal to be resolved without disrupting deadlines related to the primary election, we directed that the circuit court hold an evidentiary hearing and issue a decision on the merits by 12:00 p.m. on April 6, 2026, and that any appeal of the circuit court's decision be filed by 4:00 p.m. on April

- 6 -

6, 2026.  See id. at 580, 353 A.3d at 1231.

On April 1, 2026, Tiffany Alston, Esquire, entered her appearance in the circuit court on behalf of Mr. Dove.  Ms. Alston had not previously represented Mr. Dove in the matter.[2]

On April 6, 2026, the circuit court conducted an evidentiary hearing, at which it heard testimony and admitted into evidence various exhibits on the issue of Mr. Dove's residence on the date that he filed his certificate of candidacy.[3]  On his own behalf, Mr. Simmons testified that he is a registered Democrat in Legislative District 12B and that he filed the petition challenging Mr. Dove's residency and candidacy on March 11, 2026.[4] Marquis Harris, a process server called as a witness on behalf of Mr. Simmons, testified that he had been given legal documents to serve on Mr. Dove at two different addresses and that service was made at 1302 Bluegrass Way on March 12, 2026.  Mr. Harris testified that he first attempted service at 284 Caldwell Road.  According to Mr. Harris, when he arrived at 284 Caldwell Road, there was a light on inside of the house, "but the home did look like it wasn't lived in."  Mr. Harris testified that he did not recall that any vehicles

---

[2]After the case was remanded by this Court, on March 31, 2026, Mr. Dove's attorneys filed in the circuit court notices of withdrawal of appearance.  On April 1, 2026, Ms. Alston entered her appearance on behalf of Mr. Dove in the circuit court case and in the original appeal in this Court in Case No. 61, Sep. Term, 2025.

[3]The circuit court ordered that by April 2, 2026, all parties submit lists of anticipated witnesses and exhibits, as well as proposed findings of fact and conclusions of law.  The circuit court granted a motion for legislative postponement filed by Mr. Dove's counsel, giving Mr. Dove until April 3, 2026, to submit his witness list, exhibit list, and proposed findings of fact and conclusions of law.

[4]In addition to being registered to vote in Legislative District 12B, Mr. Simmons is a candidate for the Democratic Party nomination for the Maryland House of Delegates, Legislative District 12B, for the 2026 Gubernatorial Primary Election.

were in the driveway and that nobody answered when he knocked on the door. After attempting service at 284 Caldwell Road, Mr. Harris went to 1302 Bluegrass Way, where he saw Mr. Dove inside the house in his home office. Mr. Harris testified that Mr. Dove came to the door and accepted service of the documents.

Stephen Andersen, a retired criminal investigator for the Maryland State Police who owns a private investigation business, also testified as a witness for Mr. Simmons. Mr. Andersen testified that he was hired to conduct surveillance of Mr. Dove at 284 Caldwell Road in both the morning and evening to ascertain whether Mr. Dove, in fact, lived at that address. Mr. Andersen testified that he began his investigation on March 2, 2026. On that day, he went to 284 Caldwell Road at 5:00 a.m. When he arrived, there were no vehicles at the property, and he received no answer when he knocked on the door. Mr. Andersen stayed at the property until 9:00 a.m. and nothing occurred. Nobody entered or exited the property. Mr. Andersen went back to the house at 7:00 p.m. and stayed there until 10:00 p.m.; he observed no activity in the house at all during those hours.

Mr. Andersen testified that, the next day, March 3, 2026, he placed clear packing tape over a door jamb and on both sides of the garage door so that when he went back to the property he would be able to tell if anyone had entered the house. Mr. Andersen remained at the property from 6:00 a.m. to 9:00 a.m. on March 3rd and no activity occurred. Mr. Andersen testified that when he returned that evening and again the next morning, the tape was undisturbed, which told him that no one had used the garage or opened the door. Mr. Andersen testified that he checked the mailbox for 284 Caldwell Road and there was no mail in it addressed to Mr. Dove.

Mr. Andersen testified that, on March 5, 2026, he went to 1302 Bluegrass Way at 7:00 a.m. and saw a Chevrolet in the driveway. The Chevrolet left the driveway at approximately 8:15 a.m. Mr. Andersen followed the vehicle, pulled up next to it, and saw Mr. Dove driving. The Chevrolet driven by Mr. Dove was registered to George Caldwell, Jr. at 284 Caldwell Road.

On March 6, 2026, Mr. Andersen returned to 284 Caldwell Road, but nobody answered the door, the tape was undisturbed, and there were no vehicles there. Mr. Andersen then went to 1302 Bluegrass Way, where he observed the Chevrolet driven by Mr. Dove exit the garage. Again, on March 7, 2026, Mr. Andersen first went to 284 Caldwell Road in the morning, where there were no vehicles in the driveway and the tape was still attached to the door and the garage. That evening, Mr. Andersen returned to 284 Caldwell Road, where he observed no activity, before going to 1302 Bluegrass Way, where he observed the Chevrolet driven by Mr. Dove in the driveway. Mr. Andersen stayed at 1302 Bluegrass Way until all of the lights went out inside the house.

Mr. Andersen testified that he was asked to conduct a second investigation after this Court remanded the case to the circuit court and that was when he first observed a vehicle at 284 Caldwell Road. Mr. Andersen testified that on one occasion he saw a car, a pickup truck, and another vehicle at 284 Caldwell Road; two of the vehicles were registered to Mr. Caldwell and another vehicle was registered to Mr. Dove's attorney. Mr. Andersen testified, however, that, during the time of his second investigation, from March 31, 2026, to April 4, 2026, to the best of his knowledge, Mr. Dove slept at 1302 Bluegrass Way.

Mr. Simmons called Mr. Dove as a witness. Mr. Dove testified that he owns

properties at 1302 Bluegrass Way in Gambrills and on Lee Hall Road in Pasadena. Mr. Dove testified that he purchased 1302 Bluegrass Way in 2003 and lived there from 2003 until 2026. Mr. Dove acknowledged that, in 2019, he signed a deed for 1302 Bluegrass Way, along with an owner occupancy affidavit stating that 1302 Bluegrass Way is residentially improved, owner-occupied real property with a residence occupied by him and his wife, Rhonda Caldwell-Dove. In 2022, Mr. Dove refinanced 1302 Bluegrass Way and, at that time, affirmed in a document related to the refinancing that he would occupy, establish, and use the property for at least one year.

At one point, Mr. Dove testified that he is "going to be living at 284 Caldwell Road[,]" but immediately followed up by testifying that he said he is "currently living at" 284 Caldwell Road. Mr. Dove defined "living" there as meaning "that's where I'm going to be at for the rest of my life. That's the 284 Caldwell Road residence." Mr. Dove testified that he slept at 284 Caldwell Road the night before the hearing because he "knew" he was going to be asked that question at the hearing. Mr. Dove testified that he also slept at the 284 Caldwell Road on another occasion about a week before the hearing, that he was going back and forth between the two houses until 1302 Bluegrass Way is sold, and that he was packing up 284 Caldwell Road because he is "doing a renovation on it." According to Mr. Dove, 1302 Bluegrass Way was placed on the market for sale after February 24, 2026.

Mr. Dove testified that he and his wife are the caregivers for his father-in-law, George Caldwell, who is currently living with them at 1302 Bluegrass Way. Mr. Caldwell is the owner of 284 Caldwell Road, and Mr. Dove is trying to renovate the house there so that it is accessible for Mr. Caldwell. Mr. Dove testified that he plans to hire a contractor

- 10 -

to complete renovations. Mr. Dove testified that Caldwell Road is named after his wife's family, who have resided there for three or four generations.

With respect to the information on his certificate of candidacy, Mr. Dove testified that the mailing address listed on his certificate of candidacy, the P.O. Box in Gambrills, has been where his mail has gone for approximately 23 years. Mr. Dove testified that he listed his residential address as 284 Caldwell Road on the certificate because "[t]hat is where I plan to live. That is where I planted my flag I would be living at[.]" According to Mr. Dove, "[t]hat means that when [he] changed [his] driver's license, when [he] did everything else, [t]hat from there on out, everything was moving to 284 Caldwell Road." Mr. Dove testified that he made the change to his driver's license on February 12, 2026.

Mr. Dove testified that he owns two vehicles, both of which are registered at 1302 Bluegrass Way. Mr. Dove testified that he does not drive the vehicles "predominantly" and that the car that he drives, which is owned by Mr. Caldwell, is registered at 284 Caldwell Road. Mr. Dove testified that his W-2 and 1099 tax forms currently list 1302 Bluegrass Way as his address and that he has not updated his address with his employer yet. Mr. Dove testified that his cell phone bill, utility bills, and credit card bills are sent to the P.O. Box, which is located near 1302 Bluegrass Way.

Mr. Dove testified that he purchased the property on Lee Hall Road in 2023, that he has never lived at the property, and that the property was purchased because "[i]t was possible" that he was going to develop it and live there. Mr. Dove testified that at the time that he bought the Lee Hall Road property, he also signed a right of first refusal for an adjacent property, so that if given the opportunity, he would purchase that property too.

Mr. Dove testified that he previously ran for office in 2022, seeking to represent the County Council for District 4. At that time, he lived at 1302 Bluegrass Way and "rented a place within [] District 4 to run from that address because [he] was going to move into that address." According to Mr. Dove, when he filed to run for County Council, he was living at 1302 Bluegrass Way, but then redistricting happened and the property was no longer part of District 4, so to keep running for District 4, he obtained the rental property.

As a witness on behalf of Mr. Dove, Robyn Renas, an architect, testified that she had been referred to Mr. Dove and Ms. Caldwell-Dove around a year and a half ago. According to Ms. Renas, she was hired in April 2025 to be the architect for 284 Caldwell Road to create a "cogenerational family home" and she had completed a schematic design in the summer of 2025. Ms. Renas testified that, as of January 2026, she had completed construction documents and has since interviewed contractors and solicited bids for work to be done at the property.

As a witness for Mr. Dove, Rhonda Caldwell-Dove, Mr. Dove's wife, testified that her father owns the property at 284 Caldwell Road and the plan is for the house to be a multi-generational home to accommodate the needs of Mr. Dove, her father, and their family. According to Ms. Caldwell-Dove, she and Mr. Dove are putting the house at 1302 Bluegrass Way up for sale and have an agreement with a realtor to do so. Ms. Caldwell-Dove testified that the money from the sale of 1302 Bluegrass Way is needed for the construction that has to be done at 284 Caldwell Road. According to Ms. Caldwell-Dove, the long-term plan is for the family to live at 284 Caldwell Road, which is the place she grew up. Ms. Caldwell-Dove testified that her family purchased 284 Caldwell Road in

1940.

When asked what both her and Mr. Dove's address is, Ms. Caldwell-Dove testified that 284 Caldwell Road is their address. Ms. Caldwell-Dove acknowledged that they are not sleeping at 284 Caldwell Road every night, but testified that "soon" they would be sleeping there on a nightly basis. Ms. Caldwell-Dove testified that she and Mr. Dove have a lease agreement for a property on Stonehouse Run Drive in Glen Burnie, which is in Legislative District 12B, that is close to 284 Caldwell Road so that they can monitor the anticipated construction work. Ms. Caldwell-Dove testified that the address on her driver's license is 1302 Bluegrass Way.

At the conclusion of the hearing, the circuit court ruled orally from the bench, granting Mr. Simmons's petition. The circuit court found that Mr. Dove's domicile is 1302 Bluegrass Way, that it could not find that Mr. Dove established residence in Legislative District 12B, and that, because Mr. Dove's address was 1302 Bluegrass Way at the time he filed the certificate of candidacy, it was "a misrepresentation" to state otherwise. The court stated that a written opinion would follow that day.

In a memorandum opinion issued later the same day, the circuit court made detailed findings of fact that were consistent with its oral ruling.

After its findings of fact, the circuit court explained that under Article III, § 9 of the Maryland Constitution, to be eligible to serve as a State senator or delegate, on the date of a person's election, the person must: (1) be a citizen of the State of Maryland, (2) have resided in the State for at least one year, and (3) if the district that the person has been chosen to represent has been established for at least six months prior to the date of the

person's election, have resided in the district for six months next preceding the date of election and, beginning January 1, 2024, have maintained a primary place of abode in that district for the six months next preceding that date. The court stated that there was no dispute that Mr. Dove met the first two requirements and that the dispute concerned the third requirement.

Addressing the six-month residency requirement, the court noted that "[r]esidency means domicile" and explained that it must "determine where Mr. Dove is domiciled." (Footnote omitted). The court stated:

> The controlling factor in determining a person's "domicile is his intent. One's domicile, generally, is that place where he intends it to be." The two most significant objective factors evidencing a person's intent regarding domicile are where the person lives and where he or she votes or is registered to vote.

(Footnotes omitted). The court explained that "[a] domicile will continue unless the facts of a given case establish an intent to abandon that domicile." (Footnote omitted). The court stated: "[A] domicile is the particular permanent home of an individual, to which place he has, whenever he is absent, the intention o[f] returning." (Citation modified).[5]

The circuit court concluded that Mr. Dove's residence and primary place of abode is 1302 Bluegrass Way, finding as follows:

> [T]he Court finds that Mr. Dove has a future intent to reside in Pasadena. He is taking steps to improve the property to live in a multi-generational household that will accommodate the needs of his family, including his elderly father-in-law. While Mr. Dove changed his residential address and voter registration to Pasadena, he still keeps a P.O. Box in Gambrills. Presently, due to the work required on the property at 284 Caldwell Road,

---

[5]The circuit court explained that "[a] place of abode includes any dwelling or place where one sleeps, and merely requires actual physical presence[.]"

- 14 -

Mr. Dove cannot yet reside there.

 While he has a future intention to move to Legislative District 12B and live at 284 Caldwell Road, the Court finds he has not yet abandoned his domicile at 1302 Bluegrass Way.

 This Court finds through testimony of the private investigator, Mr. Anders[e]n, and Mr. Dove, that Mr. Dove's primary place of abode [is] at 1302 Bluegrass Way.

The circuit court determined that, "[i]f, on February 24, Mr. Dove did not live at the 284 Caldwell Road address, then it was a misrepresentation" to state as such on his certificate of candidacy.

Mr. Dove noted a direct appeal to this Court. On April 6, 2026, this Court issued an expedited briefing and argument schedule, setting oral argument for April 13, 2026.

On April 7, 2026, six days after having entered her appearance in the case, Ms. Alston filed a "Motion for Legislative Postponement," in which she advised that she is a member of the Maryland General Assembly and requested that the expedited briefing schedule be changed and oral argument be postponed until April 17, 2026, to permit her to attend the last day of the General Assembly session on Monday, April 13, 2026. Mr. Simmons filed an opposition to the motion, noting that Mr. Dove's counsel entered her appearance after the case had been remanded by this Court, knowing that it was an election case with tight deadlines. On April 7, 2026, we issued an order denying the motion, with the reasons to be explained in a subsequent opinion.

On April 13, 2026, after oral argument, we issued a *per curiam* order affirming the judgment of the circuit court, for reasons to be set forth in the opinion to be filed later. See Dove, 493 Md. at 583-84, 355 A.3d at 227. We ordered costs to be paid by Mr. Dove and that the mandate issue forthwith. See id.

## DISCUSSION

## A. The Motion for Legislative Postponement

Before reaching the merits, we will address the reason for the denial of the motion for legislative postponement. Requests for the continuance of any part of a proceeding due to legislative duties are governed by Md. Code Ann., Cts. & Jud. Proc. (1974, 2020 Repl. Vol.) ("CJ") § 6-402. CJ § 6-402(b) provides that, "[s]ubject to subsection (d) of this section, if a member or desk officer of the General Assembly is an attorney of record in a proceeding, the proceeding shall be continued from 5 days before the legislative session convenes until at least 10 days after it is adjourned."[6]

We interpret the language of CJ § 6-402(b) to mean that a court is required to grant a motion for continuance of a proceeding only when a member of the General Assembly, who is an attorney of record in a proceeding, files a motion requesting a continuance of the proceeding before the legislative session begins. When that occurs, the proceeding shall be continued from 5 days before the session begins until at least 10 days after the session ends. The 2026 Maryland Legislative Session convened on January 14, 2026, over two

---

[6]CJ § 6-402(d) provides:

If a brief, a memorandum of law, or another document is required to be filed in a proceeding continued under this section:

(1) The proceeding shall be continued for a time sufficient to allow it to be prepared and filed; and

(2) Any time prescribed by the Maryland Rules, by rule or order of court, or by any statute applicable to the filing of the document shall begin to run 10 days after the General Assembly adjourns.

months before Ms. Alston entered her appearance in the case in the circuit court on April 1, 2026. On April 7, Ms. Alston filed the motion requesting a postponement under CJ § 6-402. Nothing in the text of CJ § 6-402(b) mandates that a court is required to grant a motion for continuance filed by a member of the General Assembly after the legislative session convenes.

Moreover, CJ § 6-402(e) provides that an "attorney may waive the benefit of this section." In our view, an attorney who enters an appearance in a proceeding after the legislative session begins waives the benefit of CJ § 6-402(b), by virtue of having entered an appearance in the proceeding after the time in which the attorney could have requested relief under section (b)—before the legislative session convened.

Because CJ § 6-402(b)'s requirement that a continuance be granted did not apply, we exercised our discretion in considering the motion. We considered that Mr. Dove, who was already represented by multiple attorneys both in the circuit court and before this Court,[7] retained new counsel who was a member of the General Assembly and who entered her appearance in an ongoing election case that was obviously time sensitive. Ms. Alston entered her appearance on behalf of Mr. Dove in the circuit court two days after we remanded the case to that court for further proceedings. The case had already been the subject of expedited briefing during the previous appeal and at the time that Ms. Alston

---

[7]Before Ms. Alston entered her appearance, counsel of record for Mr. Dove included Jill P. Carter, Esquire, Erek L. Barron, Esquire, and Castell Abner, III, Esquire, each of whom filed notices of withdrawal of appearance in the circuit court on March 31, 2026.

entered her appearance in the circuit court, it was evident that a second appeal with expedited briefing and argument would follow.[8]

In the motion for continuance, Ms. Alston stated, among other things, that she would be "able to participate in oral argument any day after session adjourn[ed] at sine die on April 13, 2026; however the current scheduled date is the last day of the legislative session and the assembly works the entire day until midnight." The proposed modification, if granted, would have required this Court to hear argument and render a decision on the appeal on the Friday before the State Board's Monday, April 20, 2026 deadline for certification and publication of the ballots for the June 23, 2026 primary election. Upon consideration of the cause and necessity of the postponement and potential prejudice to the parties, we denied the request. After consultation with counsel for the parties, we scheduled oral argument to take place at 8:30 a.m. on April 13, 2026, which allowed Ms. Alston to attend the full day of the last day of the 2026 Maryland Legislative Session.

### B. The Merits

### 1. The Parties' Contentions

Mr. Dove asserts that EL § 5-202's residency requirement "cannot be interpreted in a manner that demands satisfaction of a residency condition that the Constitution itself does not yet require." Mr. Dove defines Article III, § 9's primary place of abode requirement as "the physically concrete sleeping standard[,]" and contends that for the purpose of his

---

[8]The *per curiam* opinion issued by this Court ordering the remand provided that "[a]ny appeal from the circuit court's decision on the merits must be filed no later than 4:00 pm on April 6, 2026." See Simmons, 493 Md. at 580, 353 A.3d at 1231.

- 18 -

candidacy, Article III, § 9 requires that the standard be met on May 3, six months before the date of his service in office would begin, not February 24, when he filed his certificate of candidacy. Mr. Dove maintains that a statement on a certificate of candidacy "cannot be deemed false for failing to reflect a legal obligation that has not yet matured" and that "[t]o conclude otherwise would convert constitutionally permissible candidacy into a disqualifying misrepresentation, thereby effectuating a judicial revision of Article III, § 9."

Mr. Simmons responds that Mr. Dove is not a resident of Legislative District 12B because he resided in District 31 both before and after filing the certificate of candidacy, and, as such, cannot satisfy the residency requirements of EL § 5-202. Mr. Simmons argues that a person can have only one domicile and that abandonment of an old domicile must be so permanent that it excludes the existence of an intention to return, and that, in this case, the circuit court correctly ruled that Mr. Dove did not abandon 1302 Bluegrass Way as his domicile. Mr. Simmons contends that Mr. Dove's certificate of candidacy was not "accurate or current at the time of its filing" and thus should be "invalidated[.]"

According to the State Board, with respect to candidacy in a primary election, EL § 5-202 "requires a candidate for legislative office to reside and maintain a principal place of abode in the legislative district on the day the candidate files the certificate of candidacy." The State Board maintains that this Court previously rejected Mr. Dove's contention that EL § 5-202's requirement that he reside at 284 Caldwell Road on the date of his candidacy filing conflicts with Article III, § 9 of the Maryland Constitution. The State Board argues that, on remand, the circuit court heard testimony and properly concluded that "Mr. Dove did not reside at 284 Caldwell Road on the date of his candidacy

filing and thus had misrepresented his address on his certificate of candidacy."[9]

## 2. Standard of Review

We review *de novo* a trial court's interpretation and application of Maryland constitutional and statutory provisions. See, e.g., Ademiluyi v. Md. State Bd. of Elections, 458 Md. 1, 29, 181 A.3d 716, 732 (2018) ("[I]nsofar as the circuit court's decision rested on the interpretation of the Election Law Article, we review *de novo* the circuit court's decision." (Citation modified)); Schisler v. State, 394 Md. 519, 535, 907 A.2d 175, 184 (2006) ("As the question before the Court involves the interpretation and application of Maryland constitutional, statutory and case law, we shall review the case [] under a *de novo* standard of review.").

Where an action has been tried without a jury, we review the case on both the law and the evidence. See Md. R. 8-131(c). We "will not set aside the judgment of the trial court on the evidence unless clearly erroneous[.]" Id. "If any competent material evidence exists in support of the trial court's factual findings, those findings cannot be held to be clearly erroneous." Schade v. Md. State Bd. of Elections, 401 Md. 1, 33, 930 A.2d 304, 323 (2007) (citations omitted).

## 3. Article III, § 9 of the Constitution of Maryland

Article III, § 9 of the Constitution of Maryland requires that, to be eligible to serve as a member of the General Assembly, on the date of election, a person must be a citizen of the State of Maryland, have resided in the State for at least one year next preceding that

---

[9]The County Board filed a brief in which it stated that it "takes no position in this case."

date, and have "resided" in the legislative district which he or she has been chosen to represent for at least six months prior to the election and, beginning January 1, 2024, have "maintained a primary place of abode" in the district for six months prior to the election. If the district has not been established for six months, the person must have "resided" in the district for as long as it has been established and, beginning January 1, 2024, have maintained a primary place of abode in the district for as long it has been established.

### 4. Domicile

Since at least the late 1800s, this Court has consistently held that the word "resided" as used in the Maryland Constitution, including in Article III, § 9, means "domiciled." See, e.g., Thompson v. Warner, 83 Md. 14, 20, 34 A. 830, 831 (1896); Howard v. Skinner, 87 Md. 556, 559, 40 A. 379, 380-81 (1898); Bainum v. Kalen, 272 Md. 490, 496-97, 325 A.2d 392, 396 (1974); Blount v. Boston, 351 Md. 360, 364-66, 718 A.2d 1111, 1113-14 (1998). There is no single definition of the word "domicile." See Blount, 351 Md. at 367, 718 A.2d at 1114. A person's "domicile" has been defined "as the place with which [the person] has a settled connection for legal purposes[.]" Id. at 367, 718 A.2d at 1114 (citation modified). "Domicile" has also been defined as the place where a person has their "true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place [the person] has, whenever absent, the intention of returning." Id. at 367, 718 A.2d at 1114 (citation modified). Other definitions of "domicile" include "the place that is the cent[er] of a person's affairs, and the place where the business of [the person's] life is transacted" and the place "ordinarily where [the person and the person's] family habitually dwell[.]" Id. at 367, 718 A.2d at 1115 (citation

- 21 -

modified).

Significantly, a person "can have only one domicile at a time." Id. at 367, 718 A.2d at 1115 (quoting Bainum, 272 Md. at 497, 325 A.2d at 396).[10] By contrast, "a person may have several places of abode or dwelling[.]" Id. at 367, 718 A.2d at 1115 (citation omitted). "A place of abode includes any dwelling or place where one sleeps, and merely requires actual physical presence, while domicile is the particular permanent home of an individual, to which place [the person] has, whenever [the person] is absent, the intention of returning." Jones v. Anne Arundel Cnty., 432 Md. 386, 389, 69 A.3d 426, 427 (2013) (citation modified).

We have explained that, for most Maryland citizens, there is no doubt as to their domicile:

> Typically, such person has only one place of abode which is designated as his or her residence for virtually all purposes, such as voting, income tax returns, driver's license, motor vehicle registration, school attendance, receipt of mail, banking, contracts and legal documents, the keeping of personal belongings, membership in organizations, etc. That place clearly constitutes his or her domicile.

Blount, 351 Md. at 367-68, 718 A.2d at 1115. An issue may arise, however, with people "who have more than one place of abode or who have other significant contacts with more than one place." Id. at 368, 718 A.2d at 1115. We have held on numerous occasions that "the controlling factor in determining a person's domicile is [the person's] intent[,]" and

---

[10]We have also stated that, for purposes of Maryland law, "domicile is a unitary concept" in that "the meaning of domicile and the basic principles for determining domicile have been the same in this State regardless of the context in which the issue of domicile arose." Blount, 351 Md. at 367, 718 A.2d at 1115 (citation modified).

- 22 -

that intent is demonstrated by the person's actions. Id. at 368, 718 A.2d at 1115 (citation

modified).

In Oglesby v. Williams, 372 Md. 360, 373, 812 A.2d 1061, 1068-69 (2002), we

explained:

> The determination of [a person's] intent, however, is not dependent upon what [the person] says at a particular time, since [the person's] intent may be more satisfactorily shown by what is done than by what is said. Once a domicile is determined or established a person retains [the person's] domicile at such place unless the evidence affirmatively shows an abandonment of that domicile. In deciding whether a person has abandoned a previously established domicile and acquired a new one, courts will examine and weigh the factors relating to each place. This Court has never deemed any single circumstance conclusive. However, it has viewed certain factors as more important than others, the two most important being where a person actually lives and where [the person] votes. Where a person lives and votes at the same place such place probably will be determined to constitute [the person's] domicile. Where these factors are not so clear, however, or where there are special circumstances explaining a particular place of abode or place of voting, the Court will look to and weigh a number of other factors in deciding a person's domicile.

(Citation modified). Those other factors include things such as:

> the paying of taxes and statements on tax returns; the ownership of property; where the person's children attend school; the address at which one receives mail; statements as to residency contained in contracts or other documents; statements on licenses or governmental documents; where furniture and other personal belongings are kept; which jurisdiction's banks are utilized; membership in professional, fraternal, religious or social organizations; where one's regular physicians and dentists are located; where one maintains charge accounts; and any other facts revealing contact with one or the other jurisdiction.

Blount, 351 Md. at 369-70, 718 A.2d at 1116 (citation modified).

In Oglesby, 372 Md. at 374, 812 A.2d at 1069, we stated that the following well-

settled principles apply in determining a person's domicile: (1) "[a] domicile once

established continues until a new domicile is established"; (2) "[t]o establish a new domicile there must be an abandonment of the former domicile and an acquisition of a new domicile"; (3) "in order to effect a change of domicile, there must be an actual removal to another habitation, coupled with an intention"; and (4) "[t]he abandonment of the old domicile must be so permanent as to exclude the existence of an intention to return to the former place[.]"  (Citation modified).

### 5. Election Laws

Article I, § 7 of the Constitution of Maryland states that "[t]he General Assembly shall pass Laws necessary for the preservation of the purity of Elections."  We have held that the Constitution of Maryland does not deprive the General Assembly of the authority to enact laws relating to primary elections; stated otherwise, we have held that the power "to enact a primary election law [is] inherent" in the General Assembly.  Kenneweg v. Allegany Cnty. Comm'rs, 102 Md. 119, 123, 62 A. 249, 250 (1905); see also Ademiluyi v. Egbuonu, 466 Md. 80, 100, 215 A.3d 329, 340-41 (2019) ("Pursuant to the Constitution of Maryland, the General Assembly has the responsibility of regulating elections. Accordingly, throughout the history of the State Constitution and its various amendments, the General Assembly has supplemented these constitutional provisions by enacting and amending the statutory law governing elections[.]"  (Citation modified)).

The laws enacted by the General Assembly to govern elections in Maryland are contained in the Election Law Article of the Annotated Code of Maryland.  EL § 5-201 provides that an individual may become a candidate for office "only if the individual satisfies the qualifications for that office established by law and, in the case of a party

office, by party constitution or bylaws." EL § 5-202 provides that a candidate for office "must be a registered voter at an address that satisfies any residence requirement for the office that is imposed by law and, in the case of a party office, by party rules."

EL § 5-303(a)(1) provides that, "in the year in which the Governor is elected, a certificate of candidacy shall be filed not later than 9 p.m. on the last Tuesday in February in the year in which the primary election will be held[,]" which this year was Tuesday, February 24, 2026. EL § 5-301(a) provides that an individual may become a candidate for office only if "the individual files a certificate of candidacy" and does not file a certificate of withdrawal under Subtitle 5 of the Election Law Article. EL § 5-302(a) provides that a certificate of candidacy "shall be filed under oath on the prescribed form" and EL § 5-302(b)(2) provides that a certificate of candidacy for the General Assembly of Maryland shall be filed with the State Board.

EL § 5-304(c) provides that, on a certificate of candidacy form prescribed by the State Board, a candidate shall specify the following:

(1) the office, including, if applicable, the party, district, and circuit to which the candidacy relates;

(2) the year of the election;

(3) the name of the individual filing the certificate;

(4) the address on the statewide voter registration list or the current address of that individual;

(5) a statement that the individual satisfies the requirements of law for candidacy for the office for which the certificate is being filed; and

(6) any information requested by the State Board to verify the accuracy of the information provided by the individual under this subsection.

EL § 5-304(d) provides that a certificate of candidacy shall be accompanied by the following:

(1) a filing fee satisfying the requirements of § 5-401 of this title;

(2) a separate form, unless such a form has previously been filed, establishing a campaign finance entity under Title 13 of this article;

(3) evidence that the individual has filed:

(i) a financial disclosure statement with the State Ethics Commission in accordance with the requirements of Title 5, Subtitle 6 of the General Provisions Article; or

(ii) any other financial disclosure report required by law; and

(4) any additional information required by the State Board.

EL § 5-304(e) provides that the appropriate board—either the State Board or a local board of election, whichever board the certificate of candidacy shall be filed with depending on the office sought—"shall accept the certificate of candidacy if it determines that all requirements are satisfied."

## 6. This Case

In this appeal, there are two issues: (1) whether Mr. Dove's certificate of candidacy is invalid because he misrepresented his residential address on the certificate; and (2) whether Mr. Dove satisfied the requirements in the Election Law Article to be lawfully registered to vote in, and to reside or have a place of abode in, Legislative District 12B at the time he filed his certificate of candidacy.

With respect to the first issue, we must determine whether the circuit court properly concluded that Mr. Dove misrepresented his residential address, *i.e.*, made a materially

false statement, on his certificate of candidacy and whether a candidate making a false statement about the candidate's residential address on a certificate of candidacy invalidates the certificate. The statement at issue is that, in response to a question on the certificate of candidacy form asking that he provide his residential address, Mr. Dove provided 284 Caldwell Road, which the circuit court found is not his residential address. The circuit court found that at the time Mr. Dove completed his certificate of candidacy, 1302 Bluegrass Way was his residence and domicile, and place of abode, *i.e.*, that Mr. Dove resided and lived at 1302 Bluegrass Way, not 284 Caldwell Road.[11]

We hold that the circuit court correctly determined that Mr. Dove misrepresented his residential address on his certificate of candidacy, and that Mr. Dove making a false statement about his residential address on his certificate of candidacy invalidated the certificate.

### a. Acceptance of a Certificate of Candidacy

EL § 5-304(c) lists, in subsections 1 through 5, the information a candidate must provide on a certificate of candidacy. EL § 5-304(c)(4) and (5) provide, respectively, that the candidate shall "specify" "the address on the statewide voter registration list or the current address of that individual" and "a statement that the individual satisfies the

---

[11]The parties do not dispute that 1302 Bluegrass Way is located in Legislative District 31, not District 12B. At any rate, whether 1302 Bluegrass Way is located in District 31 or 12B is not relevant to the question of whether Mr. Dove misrepresented his residential address on the certificate of candidacy. What matters with respect to whether Mr. Dove made a false statement on the certificate of candidacy is whether he provided truthful information about his address, not whether the address he provided is within the district of the office to which he sought election.

requirements of law for candidacy for the office for which the certificate is being filed[.]" EL § 5-304(c)(6) states that the candidate shall provide "any information requested by the State Board to verify the accuracy of the information provided by the individual under this subsection."

The certificate of candidacy that Mr. Dove completed advised that a candidate certifies "under the penalty of perjury" that the following information is true, that, among other things, the candidate "meet[s] all the requirements for the above listed office" and the candidate "understand[s] that final acceptance of this certificate depends upon verification of the information provided by" the candidate. STATE OF MARYLAND - CERTIFICATE OF CANDIDACY, 2026 GUBERNATORIAL PRIMARY ELECTION (2026). EL § 5-304(e) states that the appropriate board shall accept a certificate for candidacy only if it determines that all requirements are satisfied. When a candidate makes a material misrepresentation on a certificate of candidacy, such as a misrepresentation about the candidate's residential address, refusal of acceptance of the certificate is warranted and the candidate's certificate of candidacy is not valid.[12]

_____

[12]The Election Law Article does not contain a provision permitting a candidate to amend a certificate of candidacy after it has been filed. After a certificate of candidacy is filed, the person who filed it "may withdraw the candidacy by filing a certificate of withdrawal as provided in this subtitle." EL § 5-501. EL § 5-502 sets forth the time for withdrawal of candidacy. EL § 5-503(a) provides that a certificate of withdrawal shall be filed with the appropriate board with which the certificate of candidacy was filed, and EL § 5-504(a)(1) provides that "the certificate of candidacy to which the certificate of withdrawal relates is void[.]" Although a candidate may not amend a certificate of candidacy, a candidate may withdraw a certificate and, if the time for filing a certificate has not passed, may file a new certificate of candidacy.

EL § 16-501(a) provides that "[a] person may not willfully and falsely take an oath

- 28 -

### b. Residence and Domicile

The circuit court applied the correct legal framework in determining that Mr. Dove did not reside at the address he listed on the certificate of candidacy form. The circuit court's analysis concerning Mr. Dove's residential address being his domicile stems directly from our case law—namely, <u>Blount</u>, <u>Oglesby</u>, and other cases. As this Court has consistently held for well over 100 years, "resided" means "domiciled." <u>See, e.g.</u>, <u>Blount</u>, 351 Md. at 364-65, 718 A.2d at 1113. In determining a person's intent with respect to domicile, the two most important factors are "where a person actually lives and where [the person] votes" because "[w]here a person lives and votes at the same place such place probably will be determined to constitute [the person's] domicile." <u>Oglesby</u>, 372 Md. at 373, 812 A.2d at 1068 (citation modified).[13]

Consistent with our case law, the circuit court started its analysis by explaining that, "[b]eginning with the residency requirement, the Court must determine where Mr. Dove is domiciled." (Footnote omitted). The circuit court stated:

---

or affirmation prescribed: (1) by the State Board; or (2) pursuant to this article." (Paragraph breaks omitted). A person who violates EL § 16-501(a) "is guilty of perjury and shall be punished according to the laws of the State for perjury." EL § 16-501(c). EL § 5-302(a) provides that "[a] certificate of candidacy shall be filed under oath on the prescribed form." Given that a certificate of candidacy cannot be accepted by the appropriate board unless all requirements are met, and, once filed, cannot be amended to correct a misrepresentation, and making a false statement on a certificate is punishable as perjury, it is clear that a certificate of candidacy containing a false statement about a candidate's residential address is not a valid certificate.

[13]Where those factors are not so clear, a court looks to and weighs other factors in deciding a person's domicile, <u>see Oglesby</u>, 372 Md. at 373, 812 A.2d at 1068-69, such as, among other things, the paying of taxes, statements on tax returns and licenses or other governmental documents, and the address where one receives mail, <u>see Blount</u>, 351 Md. at 369-70, 718 A.2d at 1116.

- 29 -

The controlling factor in determining a person's domicile is his intent. One's domicile, generally, is that place where he intends it to be. The two most significant objective factors evidencing a person's intent regarding domicile are where the person lives and where he or she votes or is registered to vote.

When evaluating residency for purposes of the requirements of candidacy for the House of Delegates, the court looks to the place where the individual intends to be and the steps that person has taken to evidence domicile in that place. . . . A domicile will continue unless the facts of a given case establish an intent to abandon that domicile.

(Citation modified).

As explained, consistent with the principle that a person may have only one domicile, we have held that once a person has established a place of domicile there is a presumption that the location is the person's place of domicile until the person abandons the established domicile. See Oglesby, 372 Md. at 374-75, 812 A.2d at 1069; Blount, 351 Md. at 372-73, 718 A.2d at 1117. To establish a new domicile, the former domicile must be abandoned, there must be an actual removal to a new domicile coupled with an intention, and abandonment of the old domicile must be permanent such that there is no possibility of the intent to return to the old domicile. See Oglesby, 372 Md. at 374, 812 A.2d at 1069. A place of abode is any place or dwelling where a person sleeps; it "merely requires actual physical presence," whereas a domicile is a person's permanent home and the place where the person has, whenever absent, the intention of returning. Jones, 432 Md. at 389, 69 A.3d at 427 (citation modified).

In keeping with our case law, the circuit court explained:

To find that Mr. Dove's primary place of abode is in 284 Caldwell Road, the Court must be convinced that Mr. Dove is sleeping primarily at that address. A place of abode includes any dwelling or place where one sleeps, and merely requires actual physical presence, while a domicile is the

- 30 -

particular permanent home of an individual, to which place he has, whenever he is absent, the intention o[f] returning.

(Citation modified). The court found that Mr. Dove had "a future intent to reside in Pasadena[,]" *i.e.*, at 284 Caldwell Road, but did not reside there yet, and had "not yet abandoned his domicile at 1302 Bluegrass Way." The circuit court's ruling is on all fours with our case law, which instructs that a person may not establish a new domicile merely by having an intent to move to a new location, without abandonment of the former domicile. See Oglesby, 372 Md. at 374, 812 A.2d at 1069.[14]

### c. The Circuit Court's Determination

Based on the evidence developed at the hearing, we conclude that the circuit court correctly determined that at the time he completed the certificate of candidacy, 1302 Bluegrass Way was both Mr. Dove's place of domicile or residence and primary place of abode, and that Mr. Dove had neither abandoned the location as his domicile nor rebutted the presumption that 1302 Bluegrass Way remained his domicile. In other words, we agree with the circuit court's determination that the evidence adduced at the hearing

---

[14]Mr. Dove contends that reversal is warranted because the circuit court misapplied Oglesby. This contention is misguided in at least two ways. First, in its memorandum opinion issued on April 6, 2026, the circuit court did not mention Oglesby. Nor did the circuit court reference Oglesby in ruling from the bench after the hearing. Second, even though the circuit court did not rely on the case by name, what we held in Oglesby, 372 Md. at 376-77, 812 A.2d at 1070, applies with equal force here—plans to change one's domicile, "by themselves, do not prove the abandonment of an existing domicile, although it is evidence of the intention to do so. Were such planning to be sufficient, the intent requirement would swallow the requirement of an actual removal to another habitation with the intent to reside there indefinitely."

demonstrated that 284 Caldwell Road is not Mr. Dove's residence or place of domicile and

that he does not live at that location.

In concluding that Mr. Dove does not live at 284 Caldwell Road and that the location

is neither his domicile nor residence, the circuit court found:

- Mr. Dove purchased the residence located at 1302 Bluegrass Way in 2003, and Mr. Dove testified at the hearing that he lived at the Bluegrass address from 2003 to 2026.

- Mr. Dove changed his voter registration address to 284 Caldwell Road on February 17, 2026, shortly before he filed the certificate of candidacy on February 24, 2026.

- At the time of the hearing, Mr. Dove had spent one night at 284 Caldwell Road, the night before one of the hearings on Mr. Simmons's petition.[15]

- The Caldwell property is in need of renovations. Due to the work required on the property, Mr. Dove cannot reside there yet.

- Mr. Dove had the future intent to live at the Caldwell address; the court did not identify a point in time at which it found that Mr. Dove intended to begin living at 284 Caldwell Road.

The circuit court's findings of fact are not clearly erroneous. Competent evidence

supports each of the findings above. Evidence developed at the hearing demonstrated that,

since 2003, Mr. Dove has lived at 1302 Bluegrass Way. Before moving to 284 Caldwell

Road, Mr. Dove wants to have the house renovated so that it is accessible for his father-in-

law, for whom he and his wife are caregivers. Mr. Dove testified that his father-in-law

moved in with him at 1302 Bluegrass Way in February 2025 and does not go back and

forth to 284 Caldwell Road. The architect responsible for renovation of 284 Caldwell Road

---

[15]Mr. Dove did not testify that he slept at the Caldwell address on any date prior to the filing of his certificate of candidacy.

testified that a contractor has not yet been hired to begin renovation work at the property. At the time that he completed the certificate of candidacy, Mr. Dove had not listed 1302 Bluegrass Way for sale yet (although according to Ms. Caldwell-Dove's testimony, the couple has an agreement with a realtor to do so and the house had been listed for sale at the time of the hearing).

The circuit court's finding that Mr. Dove's domicile was 1302 Bluegrass Way, and that Mr. Dove had neither abandoned the Bluegrass Way domicile nor rebutted the presumption that his domicile remained 1302 Bluegrass Way is supported by the evidence, and the circuit court applied the correct standards in reaching its conclusions. We reach the same conclusion with respect to the circuit court's finding that 284 Caldwell Road was not Mr. Dove's place of abode. Regardless of whether one believes that it was too early to determine whether Mr. Dove met the constitutional requirements for office—which is a different issue than the question of whether Mr. Dove provided truthful information in completing the certificate of candidacy—the circuit court correctly determined that the Caldwell address was not Mr. Dove's domicile, residence, or his place of abode, *i.e.*, that Mr. Dove made a material misrepresentation on his certificate of candidacy.

At oral argument, counsel for Mr. Dove contended that the circuit court's findings fell short of a determination that he misrepresented his address on his certificate of candidacy. We need not spend much time on this contention. In its opinion (and in its oral ruling), after determining that 284 Caldwell Road was neither Mr. Dove's domicile nor residence nor his place of abode, the circuit court stated that if Mr. Dove did not live at 284 Caldwell Road (which the court had already determined that he did not), "then it was a

misrepresentation" for him to list 284 Caldwell Road on his certificate of candidacy. That the circuit court phrased the finding in its opinion as "[i]f, on February 24, Mr. Dove did not live at the 284 Caldwell Road address," does not negate the fact that the court had already determined both that 284 Caldwell Road was not Mr. Dove's residence and that he did not live there. The circuit court plainly found that in providing 284 Caldwell Road as his residential address on the certificate of candidacy, Mr. Dove misrepresented his residential address.

### d. EL § 5-304(c)(4)

Mr. Dove contends that he cannot be found to have made a false statement on the certificate of candidacy because EL § 5-304(c)(4) states that in filling out a certificate of candidacy an applicant should provide a voter registration address or current address.[16] According to Mr. Dove, because he provided his voter registration address as required by the statute and the address that he provided—284 Caldwell Road—is his correct voter registration address, he cannot be found to have made a false statement. We reject this argument.

We conclude that EL § 5-304(c)(4), by its plain language, requires that on a certificate of candidacy a candidate provide either the individual's voter registration address, if the address is both the individual's voter registration address and current

---

[16]As explained above, the certificate of candidacy form that Mr. Dove completed asked for a residential address and a mailing address. The circuit court made no finding as to whether the P.O. Box that Mr. Dove provided on the certificate of candidacy as his mailing address was in fact his mailing address; and Mr. Dove's answer to that question is not at issue.

address, or, if that is not the case, the candidate must provide a current address. Applying basic principles of statutory construction and common sense reveals the shortcoming of Mr. Dove's position. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly." Adelakun v. Adelakun, 491 Md. 1, 18, 338 A.3d 614, 624 (2025) (citation modified). "[T]o determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning." Id. at 18, 338 A.3d at 624 (citation modified). Where the language of a statute "is clear, we need not look beyond the statutory language to determine the General Assembly's intent" and "will give effect to the statute as it is written." Id. at 18, 338 A.3d at 624 (citation modified). Also, "we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." Id. at 18, 338 A.3d at 624 (citation modified). In addition, "[i]n every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." Id. at 19, 338 A.3d at 625 (citation modified).

"Presuming the General Assembly intends its enactments to operate together as a consistent and harmonious body of law, we also seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." Westminster Mgmt., LLC v. Smith, 486 Md. 616, 644-45, 312 A.3d 741, 758 (2024) (citation modified). In State Bd. of Elections v. Snyder ex rel. Snyder, 435 Md. 30, 54, 76 A.3d 1110, 1124 (2013), we stated "that statutory laws regarding the same subject are to be read and harmonized together in order to avoid leaving the provision at issue ineffective,

duplicative, or nugatory." (Citation omitted). As such, "where a statutory provision is a part of a statutory scheme, that provision will be interpreted within the context of that statutory scheme." Id. at 54, 76 A.3d at 1124 (citation omitted).

In providing that a candidate specify the individual's voter registration address or current address, by its plain language, EL § 5-304(c)(4) directs that a candidate provide a current address. The plain language of EL § 5-304(c)(4) states that a candidate shall specify the candidate's address that appears on the statewide voter registration list or the candidate's current address, meaning that if the candidate's address on the statewide voter registration list is not the individual's current address, the candidate shall specify the current address. To the extent that EL § 5-304(c)(4) gives a candidate a choice between specifying the address that appears on the voter registration list or the candidate's current address, the statute requires that the candidate accurately provide the individual's current address.[17]

_____

[17]For example, a candidate may have moved from one location to another and still live within the district in which the candidate is applying to run for office but not have had an opportunity to make a change of address in the voter registration record. If a candidate has not had an opportunity to update the voter registration address to a current address, EL § 5-304(c)(4) requires that the candidate provide the candidate's current address. In the event that a candidate's current address is not in the district in which the position the candidate is filing for is located, the candidate must truthfully disclose the individual's current address. To read EL § 5-304(c)(4) as meaning that a candidate may provide the candidate's voter registration address, even if it is not the candidate's current address, would lead to the unacceptable result of the State Board being provided inaccurate addresses for candidates or not being made aware that a candidate has a current address that is different from the location that the candidate purports to reside.

We note that the certificate of candidacy form that Mr. Dove submitted provided spaces for a candidate to provide information, including the candidate's "Residential Address" and "Mailing Address[.]" As Mr. Dove recognized, the response to the question

- 36 -

EL § 5-304(c)(4)'s direction that a candidate provide a voter registration address must be read in harmony with Article I, §§ 1 and 2 of the Constitution of Maryland. Article I requires that a voter registration address be the place where a voter resides. Article I, § 1 states:

> All elections shall be by ballot. Except as provided in Section 2A or Section 3 of this article, every citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which the citizen resides at all elections to be held in this State. A person once entitled to vote in any election district, shall be entitled to vote there until the person shall have acquired a residence in another election district or ward in this State.

Article I, § 2 provides for a voter registration list and states that a person's name cannot be placed on the list unless the person meets the qualifications set forth in section 1:

> [T]he General Assembly shall provide by law for a uniform Registration of the names of all voters in this State, who possess the qualifications prescribed in this Article, which Registration shall be conclusive evidence to the Judges of Election of the right of every person, thus registered, to vote at any election thereafter held in this State; but no person shall vote, at any election, Federal or State, hereafter to be held in this State, or at any municipal election in the City of Baltimore, unless the person's name appears in the list of registered voters; the names of all persons shall be added to the list of qualified voters by the officers of Registration, who have the qualifications prescribed in the first section of this Article[.]

---

concerning a candidate's "residential address" is governed by EL § 5-304(c)(4). Nonetheless, where the certificate asked that the candidate provide a "Residential Address[,]" Mr. Dove provided 284 Caldwell Road, even though he did not reside or live at the location and had only the week before listed that address as his voter registration address.

Read in harmony with Article I, §§ 1 and 2, EL § 5-304(c)(4) requires that a candidate provide on a certificate of candidacy either the individual's voter registration address, which under the Maryland Constitution is the address where the person resides, or the individual's current address, if that address is different than the person's voter registration address. Mr. Dove provided neither an accurate residential, *i.e.*, domicile, address or current address. It is of no consequence that the address Mr. Dove provided, 284 Caldwell Road, is his voter registration address. EL § 5-304(c)(4)'s provision stating that a candidate shall provide a voter registration address or current address was not intended as a way for a candidate to launder making a misrepresentation on a certificate of candidacy by having provided an incorrect address for use on the voter registration list.

The requirement of Article I, §§ 1 and 2 that to be qualified to vote a person must reside at the person's voter registration address has existed for decades. Amendments to Article I, §§ 1 and 2 were ratified on November 7, 1978. See 1977 Md. Laws 2743-44, 2751-52 (Ch. 681, H.B. 463). At that time, Article I, § 1 was amended, among other things, to reflect a change in the voting age from 21 to 18, to remove the requirement that a person have been a resident of the State for six months to be eligible to vote, and to add the language that a person "[o]nce entitled to vote in any election district, shall be entitled to vote there until he shall have acquired a residence in another election district or ward in this State." Id. at 2751-52. Since then, Article I, § 1's requirement that a person shall be entitled to vote in the ward or election district in which the person "resides" at all elections

to be held in the State has remained unchanged. Id. at 2751. In 1978, the only change to Article I, § 2 was to renumber the section from § 5 to § 2. See id. at 2744, 2752.[18]

Md. Code (1957, 1997 Repl. Vol., 1998 Supp.), Art. 33, § 5-304(c)(4) was enacted in 1998. At that time, Art. 33, § 5-304(c)(4) provided that, on a certificate of candidacy form, the candidate shall specify "[t]he address on the voter registry or the current address of that individual[.]" See also 1998 Md. Laws 2672, 2736, 2910 (Vol. IV, Ch. 585, S.B. 118).[19] In 2002, as part of the revision of the Election Code, Art. 33, § 5-304 was recodified as Md. Code Ann., Elec. Law (2003) § 5-304, effective January 1, 2003; and Art. 33, § 5-304(c)(4) became Elec. Law (2003) § 5-304(c)(4) with no change in language. See 2002 Md. Laws 2331-32, 2399 (Vol. IV, Ch. 291, S.B. 1). In 2005, Elec. Law (2003) § 5-304(c)(4) was amended, without substantive change, to provide that, on a certificate of candidacy form, the candidate shall specify "the address on the statewide voter registration

_____

[18]Since 1978, Article I, § 1 has been amended twice, once in an amendment ratified on November 4, 2008, to provide that elections shall be by ballot, except as provided in Section 3, and to change the use of "he" in two places to "the citizen" and "the person[,]" 2007 Md. Laws 3367-68 (Vol. V, Ch. 513, S.B. 1), and a second time in an amendment ratified on December 5, 2018, to add reference to Section 2A, which permits a qualified individual to register and vote at a precinct polling place on Election Day, see 2018 Md. Laws 4347-48 (Vol. V, Ch. 855, H.B. 532). Article I, § 2 has been amended only once since 1978, in the same 2018 amendment as Article I, § 1, to reference Section 2A and to change the use of "his" to "the person's[.]" Id.

[19]The credits of Md. Code (1957, 1997 Repl. Vol., 1998 Supp.), Art. 33, § 5-304 state that the section is derived from "An. Code 1957, art. 33, §§ 4-1(g), 4A-2[.]" Because neither Md. Code (1957, 1997 Repl. Vol.), Art. 33, § 4-1(g) nor Md. Code (1957, 1997 Repl. Vol.), Art. 33, § 4A-2 set forth what information a candidate must specify on a certificate of candidacy, it appears that the language requiring that on a certificate of candidacy form a candidate shall specify "[t]he address on the voter registry or the current address of that individual" was included for the first time in Md. Code (1957, 1997 Repl. Vol., 1998 Supp.), Art. 33, § 5-304(c)(4) in 1998.

list or the current address of that individual[.]"  2005 Md. Laws 3244-45, 3261 (Vol. V, Ch. 572, S.B. 723).  The amendment became effective on January 1, 2006, and the language of EL § 5-304(c)(4) has remained the same ever since.

Both at the time that Art. 33, § 5-304(c)(4) was enacted in 1998 and in 2002 during recodification of the Election Code when Elec. Law (2003) § 5-304(c)(4) was enacted, the General Assembly would have been aware that under Article I, § 1 a voter registration address must be the place where the voter resides and that under Article I, § 2 a person's name could only be added to the voter registration list if the person met the qualifications of section 1.  To the extent that EL § 5-304(c)(4) requires that a candidate provide a voter registration address or current address, under Article I of the Constitution of Maryland, the voter registration address is required to be the place where the candidate resides. If the voter registration address is not the current address, the current address must be provided. The circuit court correctly determined that 284 Caldwell Road was neither the place that Mr. Dove resides nor his current address.

The obvious purpose of EL § 5-304(c)(4) is to require that a candidate provide accurate information about the individual's address in order for the appropriate board to fulfill its duty under EL § 5-304(e) to "determine[] that all requirements are satisfied[,]" including the residency requirement.  EL § 5-202 provides that a candidate for office must be a registered voter "at an address that satisfies any residency requirement for office that is imposed by law[,]" *i.e.*, in the district in which the candidate is running for office.  We recognize that Mr. Dove challenges the application of EL § 5-202's residency requirement, contending that under Article III, § 9 of the Maryland Constitution, he was not required to

meet the residency requirement until six months before the general election. Nonetheless, EL § 5-304(c) imposes a requirement that a candidate provide an address that is the individual's voter's registration address or current address, and EL § 5-304(e) imposes an obligation that the appropriate board check certificates of candidacy to determine that all requirements are met. Regardless of the validity of Mr. Dove's argument that he did not need to meet the residency and primary place of abode requirements of Article III, § 9 until May 3, 2026, he was required to put truthful information about his address on the certificate of candidacy at the time that he filed the certificate.[20]

**Conclusion**

For the reasons discussed herein, we affirmed the judgment of the Circuit Court for Anne Arundel County entered on April 6, 2026, granting Mr. Simmons's petition and disqualifying Mr. Dove from the ballot for State Delegate from District 12B in the primary election in June 2026.

---

[20]Given our holding affirming the circuit court's determination that Mr. Dove misrepresented his residential address on his certificate of candidacy form, we need not address the question of whether a statute enacted by the General Assembly that requires a candidate for the General Assembly to reside in a district longer than six months before the date of the general election violates Article III, § 9 of the Maryland Constitution.

Under the doctrine of constitutional avoidance, a court generally does not decide a constitutional issue unless absolutely necessary. "This Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground." Pro. Staff Nurses Ass'n v. Dimensions Health Corp., 346 Md. 132, 138, 695 A.2d 158, 161 (1997) (citation modified). In not addressing the second issue in this case, we follow the principle of avoiding unnecessary decision of constitutional issues. We expect that having reaffirmed the definition of the term "residence" and explained the application of EL § 5-304(c)(4) will eliminate issues with respect to the accuracy of information provided about a candidate's address on a certificate of candidacy in the future.

Circuit Court for Anne Arundel County
Case No. C-02-CV-26-000603
Argued: April 13, 2026

IN THE SUPREME COURT

OF MARYLAND

No. 63

September Term, 2025

_____

JOHN CALVIN DOVE, JR.

v.

GARY SIMMONS, ET AL.

_____

Fader, C.J.
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Concurring Opinion by Killough, J.

_____

Filed:  July 13, 2026

I concur in the judgment. I do not join the Court's reasoning, and I would not have reached this result by the path the Court takes—if at all. Because no effective relief remains available to Mr. Dove, the outcome—that his name does not appear on the District 12B ballot—is not one I can alter. I write separately because the Court arrives there by finding a material misrepresentation the trial court refused to make, and by avoiding the question this case was brought before the Court to decide; namely, whether the constitutional residency requirement deadline was May 3, 2026.

On March 30, 2026, this Court issued a per curiam opinion that held:

> A majority of the Court concludes that Mr. Simmons's challenge is ripe with respect to his claim that Mr. Dove failed to satisfy requirements in the Election Law Article to be lawfully registered to vote in, and to reside or have a place of abode in, Legislative District 12B at the time he filed his certificate of candidacy. *A minority of the Court* concludes that Mr. Simmons's challenge is ripe with respect to his claim that Mr. Dove's certificate of candidacy is invalid because he misrepresented his residential address on the certificate. On remand, the court should address the merits of both claims.

*Simmons v. Dove*, 493 Md. 576, 579–80 (2026) (emphasis supplied).

The Circuit Court for Anne Arundel County found that at the time of the hearing on April 6, 2026, Mr. Dove's primary place of abode was not in Legislative District 12B and concluded that he was not domiciled there. The circuit court did not find, however, that Mr. Dove misrepresented anything on his certificate of candidacy. Asked by the petitioner to make that finding, the trial judge declined: "I didn't make a specific finding on that." He adjudicated eligibility directly, holding that Mr. Dove was disqualified under the law of present domicile. He did not find bad faith or an intent to deceive. He found that Mr. Dove's domicile was at 1302 Bluegrass Way, Gambrills, not at 284 Caldwell Road,

Pasadena ("Caldwell Road Residence"). "If that is misrepresentation, then it is misrepresentation. And you can represent that to my colleagues on the Supreme Court."

A minority of the Court that had concluded on March 30, 2026, that the question of whether Mr. Dove's certificate of candidacy is invalid due to a misrepresentation regarding his residential address, has now become a majority of the Court. The Court reads the trial court's ruling to hold that Mr. Dove "misrepresented his residential address, *i.e.*, made a materially false statement." Maj. Slip Op. at *26–27. I disagree that the signal "i.e." can carry that weight. It equates an objective finding about the home where Mr. Dove slept at night with a subjective finding that he lied—an element the trial court did not find and, when asked, refused to supply. A factfinder's refusal to find deception is not a finding of deception.

The finding was also unnecessary. The Court could have affirmed the circuit court solely on the finding that Mr. Dove was ineligible to run for Delegate in District 12B without a word about making false statements or misrepresenting where he lived. The misrepresentation holding presupposes that Mr. Dove had to be a resident of District 12B on the day he filed. But Mr. Dove believed the Constitution gave him until May 3 to establish his domicile in the district. Indeed, that was the initial ruling of the circuit court when it granted Mr. Dove's motion to dismiss the petition as premature:

> [W]ell, according to the Constitution [Mr. Dove has] until May 3 to establish all that, and you very well may. I don't know. I mean, look, I granted the Motion to Dismiss on that basis a couple of weeks ago.

> It would appear at this stage that a careful reading of what the Supreme Court sent last week is that a majority of them disagree with me. If that belief was wrong, it was fatal. A candidate who misjudges when the law

2

requires him to be a resident does not become eligible through the sincerity of the misjudgment, and his error defeats his candidacy as surely as any other failure to qualify. That is a complete ground for the Court's decision to affirm the circuit court. It rests on eligibility, not veracity, and it imputes to Mr. Dove nothing worse than a mistake of law.

The Court did not take that route. Rather than hold that Mr. Dove was mistaken about the deadline, it held that he was false about his address. But the address was true. It was his address on the statewide voter registration list, and § 5-304(c)(4) of the Election Law Article—which permits a candidate to list "the address on the statewide voter registration list or a current address," in the disjunctive and at the candidate's election—allowed him to list it. What Mr. Dove may have had wrong was the law: when he was obliged to be a District 12B resident. What he stated was the truth. The Court has converted a mistake about a legal deadline into a misstatement of fact, and a candidate's accurate answer into a false one. A litigant who is wrong about the law is wrong. He is not a liar.

The distinction is not a technicality; it is the difference between the two grounds. Good faith cannot cure ineligibility. Mr. Dove clearly did not pick the Caldwell Road Residence out of the phone book. He has, as the trial court found, substantial financial and personal connections to the Caldwell Road Residence, not the least being his wife grew up in that home. But the trial court found that it is not his residence. If the residency

3

requirement attached at filing, Mr. Dove's sincere belief that it did not so attach would not save his candidacy.[1]

Good faith is the dispositive issue regarding deception, and it is undisputed here. The eligibility ground the Court declined to take turned on a matter where good faith is irrelevant; in contrast, the misrepresentation ground the Court chose turns on a matter where good faith is the deciding factor. No one who heard this case found otherwise. The judge who took the evidence declined to find that Mr. Dove misrepresented anything, and traced the problem to "bad timing," not bad faith. Changing one's registration in order to run in the district one seeks to represent is, this Court has recognized, "entirely legitimate." *Roberts v. Lakin*, 340 Md. 147, 155 n.5 (1995).

The choice to focus on Mr. Dove making a false statement, rather than the legal deadline to be eligible to run for Delegate, is significant. Had the Court addressed the residency issue directly, it would have been required to defend a difficult premise: that a candidate must "perfect" their residency the moment they file, rather than by the date established in the Constitution. That is the fundamental question this case presents. By instead branding this case as being about a false statement, the Court avoided answering it. It disqualified Mr. Dove without ever holding when the law actually requires residency. The Court buried the constitutional question inside the word "misrepresented."[2]

---

[1] The trial court did not make a finding as to where Mr. Dove's primary place of abode was when he filed his certificate of candidacy. Instead, it said: "If, on February 24, Mr. Dove did not live at the 284 Caldwell Road address, then it was a misrepresentation."

[2] The Majority avoids answering the constitutional question by invoking the constitutional avoidance doctrine. *See* Maj. Slip Op. at *41 n.20. But its approach

4

I concur in the judgment nonetheless, because I cannot give Mr. Dove relief. The District 12B primary has been held, and no order of this Court can now place his name on a ballot the voters have already cast. Even were the calendar otherwise, the record does not establish that Mr. Dove satisfied Article III, § 9—domicile and a primary place of abode in the district—by May 3, so I could not declare him eligible; at most the case would demand a remand that the calendar has foreclosed. Whatever the merits of Mr. Dove's position on the day he filed, no remedy remains. That is a sufficient and honest ground on which to affirm the outcome. It is not a ground on which to endorse the route the Court took to reach it. The only relief I can afford Mr. Dove is this record: should he choose to seek office in the future, it is now established that at least one member of this Court found no evidence of a material misrepresentation on his certificate of candidacy.

The absence of a remedy for this candidate is, if anything, a reason the Court should have decided the question. Residency challenges of this kind recur in every election cycle, and they evade review because the calendar overtakes them before this Court can rule. The Court had the question squarely before it. It should have answered it.

---

misapplies the doctrine. As this Court explained in *Koshko v. Haining*, 398 Md. 404 (2007), the constitutional avoidance doctrine does not just ask courts to avoid unnecessarily deciding the constitutionality of a statute; it also directs courts to choose a plausible statutory interpretation that avoids constitutional doubt, rather than one that invites it. 398 Md. at 425–26; *see Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) (explaining that, when there are multiple reasonable interpretations of a statute, courts should choose the reading that does not create a constitutional issue because courts should presume that Congress would not intend the unconstitutional reading). The Majority's holding creates a constitutional issue by necessarily implying that Section 5-304(c)(4) of the Election Law Article requires more than the Constitution.

I respectfully concur in the judgment.